## PORTER v. COX. (No. 1127.)

(Court of Civil Appeals of Texas. El Paso. Oct. 21, 1920. On Rehearing, Nov. 11, 1920.)

**1. Brokers ⬥88(1)—Evidence held to carry to jury question whether a broker was to pay another broker one-half of a percentage of a sale price.**

Where plaintiff, a broker, with whom property had been listed for sale, listed it with defendant, another broker, who effected a sale to his son, evidence *held* sufficient to carry to the jury plaintiff's contention that it was agreed that defendant should pay him one-half of a certain percentage of the sale price as commission.

On Rehearing.

**2. Appeal and error ⬥882(9)—Party cannot object to testimony that he brought out on cross-examination.**

Evidence as to the contract involved, brought out by defendant on cross-examination, cannot be disregarded on the theory that it lacked probative force, or that it was not within the issues. (Per Higgins, J.)

Harper, C. J., dissenting.

**3. Brokers ⬥82(4) — Complaint, alleging agreement to pay commission, not supported by evidence.**

A complaint, alleging that defendant, the second broker with whom plaintiff listed lands, agreed in event of sale to pay plaintiff one-half of a percentage of the purchase price, is not supported by proof that defendant agreed to split commissions.

Appeal from El Paso County Court; J. M. Deaver, Judge.

Action by Frank E. Cox against W. C. Porter begun in justice court and appealed to county court. From a judgment of the latter court for plaintiff, defendant appeals. Affirmed.

Jones, Jones, Hardie & Grambling, of El Paso, for appellant.
Jno. T. Hill, of El Paso, for appellee.

WALTHALL, J. This suit was brought originally in the justice of the peace court by the appellee, Frank E. Cox, against the appellant, to recover the sum of $125, alleged to be due him as commission on the sale of real estate. After a trial was had and judgment rendered in the justice court, an appeal was duly prosecuted to the county court at law, and a judgment there rendered in favor of appellee for said amount, from which judgment this appeal is prosecuted.

Appellee filed a petition in the justice court, the material allegations, so far as it is necessary to state them, in view of the issues presented here, are substantially as follows:

Appellee and appellant entered into an agreement with reference to the sale of a house and lot owned by Will P. Brady. It was alleged appellant agreed that in consideration appellee list the Brady property for sale with him (appellant), appellant would sell or cause same to be sold, and in the event of a sale or the procuring of a purchaser for the property, appellant agreed to pay appellee one-half of 5 per cent. of the selling price of the property as commission; that in pursuance of said agreement appellee listed said property with appellant for sale, advised him of the price at which the property could be sold, and gave appellant full information as to the cost of the property, and such other information as would enable appellant to sell the property; that appellant, acting under said agreement and by means of the information given him by appellee, sold said property for the sum of $5,000. On special issues submitted, the jury found that appellee listed the Brady property with appellant to be sold, with the understanding that, in the event of a sale of said property by appellant, or the procuring of a purchaser of said property by appellant, appellant would pay to appellee one-half of 5 per cent. of the selling price as appellee's part of said commission; that appellant effected a sale of said property to Asa Porter, appellant's son, for $5,000.

Appellant submits two assignments of error, to the effect that the evidence is insufficient to establish the contract sued upon, and to justify the findings of the jury.

[1] There is no controversy but that appellee and appellant were both dealers in real estate in El Paso on commission, and that appellee had the Brady property for sale, and until it was sold appellee and appellant occupied offices in the same building and on the same floor. Appellee testified:

"The first conversation I had with Mr. Porter about the property was in December, 1918. * * * He told me he had a customer for a home in Manhattan Heights. * * * I told him about the Will Brady home, and described the place to him. * * * He said he would show it to Mr. Pickrell. * * * Mr. Porter asked me would we split the commission on it, and I told him we would. He asked me what the commission was to be, and it was 5 per cent. of the selling price, which was $6,300 at that time. He asked me would we split the commission, and I told him we would, he to produce the buyer and I listing him the place and assisting him any way I could in making the sale. He said he would show it to Mr. Pickrell that day. I didn't hear anything for two or three days. He came in and said Mr. Pickrell hadn't taken it, but he had some others, and wondered what the closest price was, and I told him what Judge Brady had paid for the place, and $6,300 was about as small a price as he could well take. I suppose along in February, possibly two months later, Mr.

Porter came in one day and asked about the place. He said he was a notion to buy it and move from where he was. * * * He talked to me about the place, and I told him Judge Brady had instructed me to cut the price to $5,750, and urged me to make a sale of it, he wanted to sell it, and I told Mr. Porter he could figure on it at $5,750. * * * I encouraged him as to the desirability of the neighborhood—I lived in the neighborhood, two blocks away—and as to the value of the property, because I knew the construction of the building. * * * He said he was in a notion to figure on that home for himself. * * * I encouraged him to make an offer on the place, but he didn't make an offer at that time. * * * The next time I saw him about this property was when he come in, I suppose about the middle of June, 1919, and talked to me about it, and said Asa, his son, was in the market for a home, * * * and he wondered what places I might have to show Asa, and I mentioned the Brady home again as, in my opinion, would be the best place I knew of that he would want, and we discussed this thing a few minutes and out he went. On July 6th I suppose it was, 1919, Mr. Porter came back in my office again to talk about this place, and asked me just what the place had cost Judge Brady; he didn't remember just what it had cost. I told him the exact cost, the contract price of it, and I was in a position where I knew the cost of the lots. We added the whole thing up, and added on the extras Judge Brady had placed in addition to the contract price. * * * Mr. Porter sold the place to Asa Porter for $5,000. * * * At no time before the sale, when he was contemplating buying it himself, did Mr. Porter do or say anything that indicated that he repudiated the agreement with me. When I would notify him of the reduced price, as Judge Brady would instruct me, he would ask whether it was gross or net, gross would mean with the commission and net without, and all the quotations were gross, with the 5 per cent. commission. The understanding was that all those prices included a 5 per cent. commission to the selling agent. * * * I gave him the title papers in reference to the property. 1 told him I would leave on the afternoon of July 8th, and urged him to make an offer, and he didn't, and I told him to take it up with Judge Brady."

Again on cross-examination Cox testified:

"I talked to Asa Porter about this proposition, and I told him that Mr. Porter had agreed to pay me one-half of 5 per cent. commissions. Asa didn't know anything about it, and I told him I had listed the place with his father, and we were to split the commissions. Yes; I told him his father had agreed to pay me one-half of the commission. * * * I told Mr. Reynold * * * that Mr. Porter had agreed to pay me one-half of the commission."

James Brady, father of Will P. Brady, testified:

"Mr. Porter came there on several occasions and looked at the place, and I told him that my son in leaving authorized me to make a sale of the place. * * * Finally we come to an agreement, after I wrote, and told my son I had a purchaser at $5,000 net, and he wired me back to close the deal at $5,000 net."

Appellee testified:

"As to how long we were dickering on the price, well, Asa asked me about it, and I told him it was a good piece of property, and I told him to offer $5,000. He did not make more than one offer. I heard Mr. Ramey state this morning on the stand that he and I had a conversation after this suit was brought, but I did not make the statement to Mr. Ramey that Cox claimed a commission because he listed the house with me, and I did not tell him that Cox was not entitled to a commission because Asa bought the house. I said that Cox claimed he listed some property with me. * * * If I had gone into his office and listed the property with him, he would have been entitled to his commission under those circumstances, if I sold it. * * * I don't think you could beat the other real estate man out of the commission if you bought this property yourself."

The earnest money contract is dated July 16, 1919, acknowledging a receipt of $100 of W. A. Porter to be applied on the cash payment, the deed to be made to W. A. Porter. The contract is signed as follows:

"I accept this contract of sale. [Signed W. P. Brady Pr. James Brady, Seller. W. A. Porter, Purchaser]."

The elements of fact alleged as constituting the agreement between appellant and appellee, as we interpret it, seems to be: That appellee on his part agreed to list the Brady property with appellant for sale. Appellant on his part, in consideration that appellee list the property with him, he (appellant) would sell the property or cause it to be sold; that in the event he made a sale, or in the event he procured a purchaser he (appellant) would pay appellee one-half of 5 per cent. of the selling price of the property as commission. The issues submitted, we think, are within the terms of the agreement as pleaded.

After a careful study of the entire record, we have concluded that the evidence was sufficient to justify the submission of the issues to the jury, and that the issues submitted are sustained by the evidence.

The case is affirmed.

## On Rehearing.

HIGGINS, J. The writer desires to indicate the reason why, in his opinion, this case was properly affirmed.

As stated by Chief Justice HARPER in his dissent, the exact question presented by appellant under his first assignment is that the contract pleaded by the plaintiff was not established by any evidence. The contract as pleaded is correctly stated by Judge HARPER; also the testimony in support of the pleading.

[2, 3] Standing alone and unexplained, I

think the first quoted testimony uncertain in meaning and insufficient to establish the contract pleaded. Unexplained, it would rather import a promise from Cox to Porter to pay one-half of 5 per cent. of the selling price. But upon cross-examination appellant himself elicited the testimony relative to the conversations of Cox with Asa Porter and Mr. Reynold. Having developed this testimony, he is in no position to say that it should have been excluded, or that it is entitled to no probative force. The writer thinks it sufficient to clear up the meaning of Cox's previous testimony, and to show that he meant by his testimony, relative to "splitting" the commission, that Porter agreed to pay him (Cox) one-half of 5 per cent. of the selling price. Considering this testimony and the respective situation of the parties and the entire subject-matter of the transaction, this evidently is what was meant by Cox's testimony. If so, there was evidence to support the contract as pleaded.

The second assignment is that the verdict is contrary to the undisputed evidence. Upon the views expressed it follows that this assignment is without merit.

HARPER, C. J. (dissenting). It seems to me that the exact point urged by the appellant is not passed on in this opinion. The proposition is:

"Plaintiff pleaded * * * in the event of a sale or the procuring of a purchaser * * * defendant agreed * * * to pay plaintiff one-half of 5 per cent. of the selling price as commission and plaintiff's part of the commission"

—and such contract as pleaded was not established by any evidence.

The appellee testified that the contract was:

"Mr. Porter asked me would we split the commission on it, and I told him we would. He asked me what the commission would be, and it was 5 per cent. of the selling price."

Again on cross-examination:

"I talked to Asa Porter about this proposition, and I told him that Mr. Porter had agreed to pay me one-half of 5 per cent. commissions. Asa didn't know anything about it, and I told him I had listed the place with his father, and we were to split the commissions. Yes; I told him his father had agreed to pay me one-half of the commission. * * * I told Mr. Reynold * * * that Mr. Porter had agreed to pay one-half of the commission."

It seems to me that the pleadings charge that defendant agreed in person to pay one-half of 5 per cent. commissions in the event he (defendant) procured a purchaser, whilst the effect of the testimony is that the agreement was for defendant to divide the 5 per cent. commission to be paid by the owner of the property in case he procured a purchas-

er. In other words, the testimony does not correspond with the contract pleaded. An agreement to be personally liable is not the same as an agreement to divide something to be procured from another.

I am therefore of the opinion that the motion for rehearing should be granted, and the cause reversed and remanded for a new trial.